(129 So. 5)

ALABAMA WATER SERVICE CO. v. HARRIS.

6 Div. 424.

Supreme Court of Alabama.

May 15, 1930.

Rehearing Denied June 19, 1930.

As Modified June 27, 1930.

Harsh & Harsh, of Birmingham, and Mathews & Mathews, of Bessemer, for appellee.

Huey & Welch and W. G. Stone, all of Bessemer, for appellant.

BOULDIN, J.

Action for damages against a public water company for wrongful cutting off the water supply of a customer, and for refusal to furnish water.

Count one is for "wrongfully" cutting off plaintiff's water supply; count two for "negligently" cutting off the same; count three for "wantonly and wrongfully" cutting off such service by defendant's servant or agent acting within the line and scope of his authority; count four for "wrongful refusal" to supply plaintiff water service; and count six for "wantonly and wrongfully" refusing to supply water service.

These several counts show the relation of public service water company and custom-

er between the parties, that plaintiff had paid for water service at his residence, giv-, ing its street number, for the first quarter of 1928, as per bill rendered by defendant, and that, nevertheless, his water supply was cut off February 16, 1928.

The facts being shown out of which the duty to furnish water service arose, a general averment that the discontinuance and refusal of such service was wrongful, negligent, or wanton is sufficient.

■ Failure to aver the bill rendered by defendant was for the correct amount, or that it identified the premises where service was being received, furnishes no ground of demurrer.

Such matters, if an answer to the complaint under all the facts, were defensive, and were properly presented under plea in short by consent.

■ Plaintiff, during the year 1926, was a customer of defendant company at No. 1222 Thirteenth avenue in Bessemer. In November of that year plaintiff removed to No. 1230 on the same street. He went to the company's office, signed up for water service at his new place of residence, adjusted his old account, and paid for the new service to January 1, 1927. Early in January, 1927, the company made out against him a bill for the first quarter of that year, and mailed it to him at his rural mail address which had not been changed. He received the bill, paid it, and obtained the company's receipt for his quarterage.

By mistake at the office the bill was made out for $2.40, the rate at the former place, instead of $2.75, the rate at his new location. For convenience of the company the bills were made to show the ledger numbers of accounts against customers. This bill, by mistake, showed the ledger number of the old account. Plaintiff's account, under the new number, showing no payment, an order was issued to the cut-off man, who proceeded to cut off plaintiff's water supply, but upon the receipt being presented by plaintiff's wife the water service was restored at once.

A second cut-off order was issued some days later, and on February 16, 1927, plaintiff's water supply was cut off, and so remained until about April 11th thereafter, when plaintiff's attorney arranged for payment of the advance quarterage beginning on April 1st, and the service was resumed.

Thus far the facts are without dispute.

On the day after water was cut off plaintiff, who had not been seen before, went to the company's office and showed the management his receipt. The parties differ as to what then transpired. According to plaintiff the local manager demanded the cut-in fee for restoring the water service, which plaintiff declined to pay.

According to defendant, plaintiff was asked to sign a receipt for the money paid that the same might be charged back on the old account and credited upon the new, and this the plaintiff declined to do.

Under the undisputed facts plaintiff was due to recover on the counts in simple negligence, both for cutting off the water supply and for refusal to restore the service.

The contention that cutting off the water was due to plaintiff's mistake in making payment of a bill showing the amount and ledger number of the former service is untenable. The bill was a demand for his advance quarterage and paid for his own service, not that to be furnished the new occupant of the former place. Having received and retained plaintiff's money covering service due to and beyond the date it was cut off, he was due the service. Cutting it off as a result of defendant's mistake in bookkeeping was negligence.

■ Refusal to restore water service was not justified by plaintiff's refusal, if he did, to sign a receipt which would constitute evidence that he had paid on another's account, not on his own. He was called upon to do nothing tending to justify the cutting off of his water, which had already occurred.

■ It is suggested in argument that water companies operate under law-made rates, like railroads; that an error in making out the bill does not release the claim for any balance; and that since plaintiff was due to pay 35 cents more, the difference in rate between the two connections, he cannot complain of refusal of service without payment of same.

No evidence tends to show any demand for this difference, nor a refusal of service for its nonpayment. If such fact were shown, it would not excuse refusal of water service for the time actually paid for. The right of a railroad to hold freight for the true amount presents no analogy.

There was no error in refusing the affirmative charge to defendant as to any of the simple negligence counts.

We reach the same conclusion as to the wanton counts.

■ One phase of the evidence tends to show that after the cut-off man saw the receipt, and declined to leave the water cut off on his first visit, and made return of the ticket issued to him, the management waited a few days for plaintiff to come in and adjust matters, and, upon failure so to do, his water was cut off without further notice by order of the management. Further evidence tends to show a disposition to put the blame on plaintiff when he came to the office after his water was cut off, and a refusal to restore service save upon payment of an unlawful exaction. True, there is some conflict

here, but this presented a question for the jury.

Other evidence shows another bill had been rendered and paid by the occupant of the former residence for the same quarter.

■ Manifestly the plaintiff was not called upon to go to defendant, but of defendant to take up with him any matter of difference, if adjustment was deemed necessary before the beginning of next quarter, or before plaintiff had received the service he had paid for.

■ We cannot say there is no evidence of the conscious failure of duty with knowledge of probable injury in proceeding thus to cut off the water supply. The refusal to restore service after the interview at the office presents a stronger case of wantonness, if refusal was put on the ground stated by plaintiff.

■ Evidence for plaintiff tended to show his wife was sick, convalescing after confinement, at the time the water supply was cut off.

The court's oral charge limiting consideration of such evidence to the annoyance and inconvenience of plaintiff himself was proper and beneficial to defendant. Nor was there error in instructing the jury in that connection that such evidence might be considered as a circumstance in aggravation of damages.

Numerous assignments of error are presented. What has been said will suffice to indicate that most of them are not well taken. We find none of them presents ground for reversal, or calls for special treatment, save the question of excessive award of damages.

A verdict was rendered and sustained below on motion for new trial for $2,500.

■ Plaintiff was without water service for some 55 days, during which time he was put to the labor and expense of hauling water for domestic use some 3 or 4 blocks, and in rainy weather some 3 miles. This, with the inconvenience and annoyance resulting from the wrong, constituted the elements of compensatory damages. Punitive damages, if wantonness appear, must rest in large measure within the discretion of the jury. But this is not an unbridled discretion.

The nature of the case should be considered, the character and extent of injury likely to result from disregard of duty, and all the attendant circumstances. Judicial fairness, avoidance of any form of passion or bias tending to becloud the sense of justice, should be carefully maintained. Too often this court is forced to consider unduly large verdicts for damages.

Legislative wisdom has not, so far as we recall, fixed penalties by way of fines for torts, within approximately such range as often seen in verdicts for punitive damages.

■ This court, fully sensible of the wise rule against the invasion of the province of juries, often sustains verdicts which we think excessive. We would have it known that failure to disturb a given verdict does not mean that we approve it. It means no more than that allowing all presumptions in favor of the judgment of the jury, followed by the ruling of the trial judge, we are not clearly convinced it is so excessive as to demand the interposition of this court.

But it is the high duty of this court, now recognized by statute, where a clear case of duty so demands, to require a remittitur of damages so as to reduce it to a reasonable sum as a condition to affirmance.

This is such a case.

■ Accordingly, an affirmance is conditioned upon a remittitur being entered by appellee within the time fixed by law, for the sum of $1,750, reducing the judgment to the sum of $750, with interest from this date. Otherwise the judgment will stand reversed, and the cause remanded.

Affirmed conditionally.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.

### Rehearing Ex Mero Motu.

BOULDIN, J.

Upon filing a remittitur as per the order of this court, appellee calls attention to the terms of the statute, saying:

"But if the appellee shall file with the court a remittitur of the amount deemed excessive by the court, the court shall reduce the amount of the judgment accordingly and shall affirm the case and enter a judgment for such reduced amount, which judgment so entered shall be and remain the judgment of the lower court *and shall date back to the time of the rendition of the judgment in the lower court.*" Section 6150, Code.

By inadvertence the decision calls for interest on the reduced judgment from the date of the conditional affirmance. Let the judgment now entered conform to the statute above quoted, by which it will date back to the time of the rendition in the court below.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.