E. C. MESSER and Texas Employers' Insurance Association, Appellants,

v.

L. B. FOSTER COMPANY, Inc., et al.,
Appellees.

No. 16907.

United States Court of Appeals
Fifth Circuit.

April 17, 1958.

Edward L. Poole, Merchant & Fitzjarrald, Amarillo, Tex., for appellant, E. C. Messer.

R. A. Wilson, Underwood, Wilson, Sutton, Heare & Boyce, Amarillo, Tex., for appellant Texas Employers' Ins. Ass'n.

S. Thomas Morris, Gibson, Ochsner, Harlan, Kinney & Morris, Amarillo, Tex., for appellee.

Before HUTCHESON, Chief Judge, and BROWN and WISDOM, Circuit Judges.

## JOHN R. BROWN, Circuit Judge.

This appeal from a judgment on a general verdict for the defendant presents the narrow question whether the Court erred in not giving an explanatory instruction on concurrent negligence of the defendant's servant and the co-employee of the plaintiff. The case is the now familiar one in which the plaintiff (Messer) injured while in the course of employment for his employer (Jones) sues a so-called third party (Foster) for the negligence of his (Foster's) servants.

For our purposes, even indulging the inferences most favorably to the plaintiff, the setting can be briefly summarized. Messer worked for Jones, a water-well drilling contractor. Jones purchased two truck-loads of 16-inch steel well casing from Foster in Houston, Texas. Under the sales contract, Foster was to deliver it to Jones' yard at Dumas, Texas.

When the two trucks arrived at Jones' yard, Messer or some other employee of Jones determined which unloading-storage rack was to be used and Foster's trucks were spotted accordingly by the respective drivers, Baker and Jaegar.

The storage rack was a substantial, permanent structure comprising two parallel railroad rails spaced about twenty feet apart and fastened securely to concrete piers. The height of the rails above the ground was about three feet. Pipe being unloaded was rolled back on these rails. Foster's loaded truck-trailer was spotted immediately next to the end of the storage rack rails. Messer and his fellow employee, McVicker, then spotted the Jones flatbed truck so that it was perpendicular to the other side of the loaded Foster truck with a space of two to six feet between its rear end and the side of the loaded truck. The Jones truck was equipped with a permanent A-frame and power winch. With the Jones truck in this position, the A-frame extended over and above the loaded pipe on the Foster truck and its apex was above and over the near end of the storage rack rails. By a bridle-like arrangement, either fastened to or a part of the cargo fall on the winch drum, there were two hooks, one to be hooked into each end of the piece of pipe being unloaded. Tag lines were attached to each of the hooks which enabled the two men "hooking on" conveniently to pull the hooks back to the truck bed for the next operation. The truck bed was approximately four and one-half feet above the ground. Thus, in unloading a joint of this 40-foot pipe, it was moved horizontally from its position on the truck bed to a point below the A-frame apex and simultaneously in a vertical upward direction over the edge of the trailer bed and thence downward until it rested on the storage rack rails. This was, of course, a more or less continuous operation from the moment the hoisting began until the joint rested on the rails. In addition to hoisting and lowering away by the power winch, the Jones truck was occasionally moved a few feet forward or backward depending, ap-

parently, on the position of the particular joint on the truck bed.

In this operation, McVicker, the fellow employee, was handling the Jones winch truck. He had to look out through the rear window in the cab of that truck. With the load of pipe on the Foster truck between him and the storage rack, he could not see Messer and had to depend on a hand signal from one of the men hooking on before hoisting a joint of pipe. Messer, the plaintiff, was on the ground at the storage rack. He would stand clear to one side while a joint was being unloaded onto the rails. Once it was on the rails, he would remove the hooks and then, in a position between the rails, roll the joint to the rear of the rack. Foster's two truck drivers, Baker and Jaegar, were the hook-on men and Baker was the one giving the hand signals to McVicker in the winch truck. Baker in turn was to get a signal from Messer when it was in order to hoist the next joint off the truck.

All went well until they handled the last joint out of a cargo of approximately twenty pieces of pipe. Messer was between the storage rack rails with his back to the Foster truck. Baker, without looking to see whether Messer was clear, gave a signal to McVicker to hoist the last joint. McVicker hoisted away, and, apparently simultaneously the truck accidentally rolled back about two to four feet. This caused the joint of pipe to whip and swing wildly with one end lower and the other higher. Messer, then between the loading rack rails at a point approximately twelve feet from the side of the Foster truck, was struck by this pipe near his waist producing extensive injuries.

■ This brings us to Messer's complaint. Messer, accepting otherwise the Court's general charge, specifically requested the submission of a proposed charge and excepted to the failure of the charge generally to submit clear instructions on the effect of concurrent negligence of McVicker and Baker. While the written requested charge may have been technically imperfect, we think the ex-

ception adequately directed the Court's attention to the matter and we therefore assume that the point was properly preserved. F.R.C.P. 51, 28 U.S.C.A.

His theory, advanced with consummate skill by his resourceful advocate, was that since the episode leading to his injuries was one continuous physical event participated in by Messer, McVicker and Baker, the jury needed plainly to be told that if negligence of Baker proximately caused the injuries, then the verdict should still go for the plaintiff even though the jury might find that McVicker's acts were also negligent and a proximate cause. This he insists was peculiarly necessary because of emphasis in the charge that if McVicker's acts were the *sole* proximate cause (whether negligent or not), the plaintiff could not recover. And, he says, his apprehensions turned out to have had prophetic basis in view of the prolonged deliberations by the jury and their returning twice to report inability to agree and to request further instructions.

■ While this theory of concurrent negligence was, of course, correct as a matter of substantive law, McCoy v. Beach-Wittman Company, Tex.Civ.App., 22 S.W.2d 714, (writ dism'd); Husky Refining Company v. Barnes, 9 Cir., 119 F.2d 715, 134 A.L.R. 1221; Texas Power & Light v. Stone, Tex.Civ.App., 84 S.W. 2d 738 (writ ref.); Gulf, C. & S. F. Ry. Co. v. Ballew, Tex.Com.App., 66 S.W.2d 659; McAfee v. Travis Gas Corp., 137 Tex. 314, 153 S.W.2d 442; Robert R. Walker, Inc. v. Burgdorf, 150 Tex. 603, 244 S.W.2d 506, the failure of the Court expressly to charge in these terms does not necessarily compel reversal. If it was error, that error must have been harmful, F.R.C.P. 61, and it may not be deemed error if the charge otherwise adequately instructs on the controlling principles. Travelers Indemnity Co. v. Bengtson, 5 Cir., 231 F.2d 263, 267; Western Produce Co. v. Folliard, 5 Cir., 93 F.2d 588, 589–590.

The Court, by language following traditional Texas charges, gave precise instructions in the general charge on neg-

ligence, proximate cause, sole proximate cause, new and intervening cause, contributory negligence and unavoidable accident. The jury was carefully told that " * * * there may be simply one proximate cause of an event which has taken place or there may be more than one proximate cause. If there is only one, it is spoken of as 'the sole proximate cause', and if there are more than one proximate causes, these are spoken of as 'concurrent proximate causes.'" With precision the Court then spelled out carefully that if the jury found that Baker "failed to keep a proper lookout * * * with respect to the location of * * * Messer just before the mishap occurred * * *, or * * * that when the last pipe of the load was reached and the hooks had been put in the * * * pipe, * * * Baker * * * gave a signal for the winch operator to hoist that pipe up, and * * * that * * * act * * * in giving such signal at the time * * * was a negligent act on his part, and * * * that any such negligence of * * * Baker * * * was a proximate cause of the pipe striking and injuring * * * Messer, then * * * you will return a verdict for the plaintiff and * * * assess whatever damages you find * * * unless you find for the defendant under some other part of the charge."

There was thus nothing affirmatively stated which either required as a condition for a verdict for the plaintiff a finding that Baker's negligence was the sole proximate cause, or which forbade a verdict for the plaintiff if McVicker's act played a part. With equal care, the Court covered the effect of McVicker's acts in plain and understandable language. Modified slightly by subsequent language which merely changed the burden of proof, the Court instructed: " * * * if you find * * * that * * * McVicker, who was handling the truck with the winch on it, was negligent in permitting the gin pole truck to roll backwards * * * or in failing to maintain proper control of the gin pole truck or in suddenly using the brakes of the gin pole truck, and * * * that the negligence of * * * [McVicker] in any one or more of the respects just stated was the *sole* proximate cause of the ensuing injury * * *, and if you fail to find that * * * McVicker * * * was negligent in any of the respects just mentioned but you find that he did any one or more of the acts just mentioned * * * and that such act on his part, though not negligent was the *sole* proximate cause of the injury to the plaintiff, then * * * your verdict * * * will be for the defendant."

Consequently, McVicker's actions decisively compelled a verdict for the defendant only in the event the jury found his acts, whether negligent or not, the *sole* proximate cause. There was nothing about this instruction which would lead intelligent jurors to conclude that such result would have to follow if McVicker's acts were only *a*, not the *sole*, proximate cause. The contrary was plainly implied both by the language employed, and the related charge that the plaintiff should have a verdict if any act of Baker was negligent and was *a* proximate cause.

In addition to this, we must bear in mind that while the doctrine of concurrent causes reflected by the cases cited above is a correct principle of law, a unique situation is presented where, as here, one of those parties is one against whom the plaintiff could not recover. The Texas Compensation Act, Rev.Civ. Stat.Tex. Art., 8306 et seq., forbade recovery by Messer against Jones. So in the final analysis the requested charge was merely an elaboration of the theory of several proximate causes and the defensive plea of sole proximate cause. The Court might well have given some further or other explanation as in its wise and considered discretion it thought advisable. But a failure to do so in this record was not, as apparently it was thought to be in Hower v. Roberts, 8 Cir., 153 F.2d 726, harmful and reversible error.

Nor do we think that this is affected by the subsequent inquiries of the jury. The record, which contains the full re-

ported jury summations of both sides, shows that these alternatives were fully argued by counsel. The inquiries of the jury when it twice reported difficulties in arriving at a verdict are equivocal at best. The first time, the foreman stated to the Court that his uncertainties had been answered by the Court's twice repeating verbatim the earlier charge on Messer's contributory negligence. The second, and last time, the foreman stated "We feel as though we are suing the wrong company to start with, * * * Therefore, we would like to know Mr. McVicker's position in this."

The full case on hotly contested issues concerning the status and actions of Foster's truck drivers, the actions and handling of the truck and winch by McVicker, and contributory negligence of Messer was one for the jury which, under correct and adequate principles, found for the defendant. There it ends.

Affirmed.