The B. F. GOODRICH TIRE COMPANY, Appellant,

v.

E. H. LYSTER, Appellee.

No. 20429.

United States Court of Appeals
Fifth Circuit.

Feb. 7, 1964.

412

James E. Clark, and Bibb Allen, Birmingham, Ala., for appellant, London, Yancey, Clark & Allen, Birmingham, Ala., of counsel.

Roger F. Rice, J. Kirkman Jackson, Birmingham, Ala., for appellee.

Before RIVES and WISDOM,* Circuit Judges.

* The third Judge constituting the Court became ill before argument was heard, and the case is decided by a quorum. 28 U.S.C.A. § 46(c).

WISDOM, Circuit Judge.

The complaint alleges that E. H. Lyster, the plaintiff, was in one of the B. F. Goodrich Tire stores in Mobile, Alabama, to purchase tires when Earl Jones, branch manager of the store, in the scope and furtherance of his employment, attacked *Lyster* without provocation, causing serious injury. His injuries were an effusion and fracture of his right knee and one or two bites on the arm. Lyster has had a history of difficulties with his knee and the amount of injury to it resulting from the fight was strongly in dispute in the trial.

The affray took place after several hours of *more or less steady drinking* engaged in by both Jones and Lyster, according to the defendant. According to the plaintiff, however, he did not have a drink. In the trial the issues were those one would expect to be fought over in such a case. Was Jones or Lyster telling the truth. Had Lyster been drinking? If so, was he drunk? Who was the aggressor? The defendant took the legal position that B. F. Goodrich could not be charged under the doctrine of respondeat superior for acts which took place long after regular hours on a Saturday evening as a result of a personal quarrel during a private drinking bout.

The plaintiff filed suit in the Alabama state courts. The defendant removed the suit to the federal courts. After a hard fought trial, the jury awarded the plaintiff $30,000 in compensatory and punitive damages.

The appeal raises the following questions:

A) Is there any substantial evidence that the store manager Jones was acting in the line and scope of employment when he assaulted the plaintiff?

B) Was it reversible error for the trial judge to refuse the written charges of the defendant which stated that Jones was not acting in the line or scope of employment if the fight was over the purchase of whiskey or was the result of a personal argument?

C) Was it reversible error for the trial judge to refuse to charge that the jury may look at the age and relative size of the participants in passing on the defense of self-defense?

D) Was it reversible error to refuse to charge that the jury could mitigate the damages if it found that the plaintiff used abusive and insulting language to Jones?

E) Did the insinuation of plaintiff's counsel that Jones had been a drunkard create a bias which could not be cured by the admonition of the trial judge?

F) Did the trial judge abuse his discretion in failing to grant defendant's motion for new trial on the ground that the amount of the award by the jury was excessive?

G) Was it error for the trial judge to refuse to admit into evidence the deposition of Posey?

We reverse and remand for the reason that the trial judge erred in refusing to admit the deposition of Lonnie Posey.

### I.

Posey was a salesman for Goodrich and was present during all of the relevant events on the day of the fight. September 1, 1962, one of the attorneys for the plaintiff took Posey's deposition. During the course of the deposition, Posey was asked two questions with regard to contradictory statements he had allegedly made at some prior time. Posey, on the advice of defendant's counsel, refused to answer the two questions until the earlier statements were furnished him. Both Posey and defendant's counsel were of the impression that the statements mentioned were written statements. In fact, they were *oral* statements. The plaintiff's attorney realized that Posey and opposing counsel were under a mis-

impression, but did nothing to correct it. After Posey's continued refusal to answer unless shown the statements, the examination was completed as provided in Rule 37(a) of Federal Rules of Civil Procedure.[1] September 18, the plaintiff petitioned the court for an order compelling the deponent to answer the questions. The hearing for this motion was set for September 24, the day before the actual trial. At this hearing the defendant's counsel learned for the first time that Posey's earlier statements were *oral* statements.

In the presence of the court, the attorneys for the parties agreed informally that the deposition would be admitted, provided that Posey made written answers to the unanswered questions. Un-

fortunately, the defendant's attorney entered into this agreement without knowing that Posey had severed his ties with Goodrich, had taken another job, and at that moment was on his way to Alexandria, Louisiana. It was physically impossible by the time of the trial for the defendant's counsel to find Posey and obtain written answers to the questions.

The defendant's counsel brought out these facts when the deposition was offered in evidence. The trial judge, exercising his discretion under Rule 37(b) (2) (ii),[2] refused to allow the introduction of the deposition. In his order, he stated that he accepted, without further proof, the statement that Posey was not within one hundred miles of the court. The trial judge therefore did not rely on

---

1. Rule 37(a) provides:

    "(a) *Refusal to Answer.* If a party or other deponent refuses to answer any question propounded upon oral examination, the examination shall be completed on other matters or adjourned, as the proponent of the question may prefer. Thereafter, on reasonable notice to all persons affected thereby, he may apply to the court in the district where the deposition is taken for an order compelling an answer. Upon the refusal of a deponent to answer any interrogatory submitted under Rule 31 or upon the refusal of a party to answer any interrogatory submitted under Rule 33, the proponent of the question may on like notice make like application for such an order. If the motion is granted and if the court finds that the refusal was without substantial justification the court shall require the refusing party or deponent and the party or attorney advising the refusal or either of them to pay to the examining party the amount of the reasonable expenses incurred in obtaining the order, including reasonable attorney's fees. If the motion is denied and if the court finds that the motion was made without substantial justification, the court shall require the examining party or the attorney advising the motion or both of them to pay to the refusing party or witness the amount of the reasonable expenses incurred in opposing the motion, including reasonable attorney's fees."

2. Rule 37(b) (ii) provides:

    "(b) *Failure to Comply With Order.*
    "(1) *Contempt.* If a party or other witness refuses to be sworn or refuses to answer any question after being directed to do so by the court in the district in which the deposition is being taken, the refusal may be considered a contempt of that court.
    "(2) *Other Consequences.* If any party or an officer or managing agent of a party refuses to obey an order made under subdivision (a) of this rule requiring him to answer designated questions, or an order made under Rule 34 to produce any document or other thing for inspection, copying, or photographing or to permit it to be done, or to permit entry upon land or other property, or an order made under Rule 35 requiring him to submit to a physical or mental examination, the court may make such orders in regard to the refusal as are just, and among others the following:
    "(i) An order that the matters regarding which the questions were asked, or the character or description of the thing or land, or the contents of the paper, or the physical or mental condition of the party, or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;
    "(ii) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing in evidence designated documents or things or items of testimony, or from introducing evidence of physical or mental condition."

Rule 26(d). Instead, he treated the informal agreement of September 24 as an order pursuant to Rule 37(a) (despite the fact that no actual order appears to have been made), and the offering of the deposition without the additional written answers as a refusal to comply with the order, as governed by Rule 37(b)(2).

Technical requirements in the Rules cast strong doubt on the correctness of the Court's ruling. (1) Rule 37(a) provides that the party seeking discovery "may apply to the court in the district where the deposition is taken for an order compelling an answer." Here that was the District Court for the Southern District of Alabama. The plaintiff did not file his motion in that district. Instead, he filed it in the District Court for the Northern District of Alabama, and the *trial court,* not the court ordering the deposition, issued the order compelling the witness to answer. (2) Rule 37(b) deals with failure to comply with the order, and the sanctions which may be imposed "by the court in the district in which the deposition is being taken." The trial judge relied on this section, citing 37(b)(2)(ii), in refusing to allow the deposition to be admitted. (3) This subparagraph allows sanctions to be imposed on "the disobedient party", the "party" actually "ordered" to answer the questions propounded. Under 37(a) this is "the refusing party or deponent and the party or attorney advising the refusal." Here, the sanctions were imposed on the defendant. Barron and Holtzoff, 2A Federal Practice and Procedure (Wright's Ed.1961) § 852 states:

> "The following propositions appear to be sound: (1) the court in the district where the deposition is being taken has the power to compel an answer to a proper question, and it can enforce such order by contempt proceedings against either a party or a witness; (2) the court in the district where the suit is pending cannot impose any sanction against a witness who is not a party, nor an officer or managing agent of the party; (3) the court where the action is pending, having jurisdiction of the parties, can compel an answer to a proper question directed to a party, and in addition to contempt, can enforce the other consequence set out in Rule 37(b)."

See also 4 Moore, Federal Practice § 37.-03 (1963). Posey was a mere Goodrich employee at the time of the deposition, and he was not even an employee at the time the trial court ordered the questions answered.

In terms, Rule 37 supports the defendant's position. We prefer, however, to avoid the uncertain footing a tight construction of Rule 37 affords. We place our decision on the broader, firmer ground that in the circumstances of this case it was an abuse of judicial discretion for the trial court to exclude the deposition.

We read Rule 37 as establishing a flexible means by which a court may enforce compliance with the Federal discovery procedures through a broad choice of remedies and penalties. See Rosenberg, Sanctions to Effectuate Pretrial Discovery, 58 Col.L.Rev. 480 (1958); Developments in the Law—Discovery, 74 Har.L.Rev. 940, 991 (1961). Although a trial judge's latitude in framing orders and in penalizing failures to comply is broad, his discretion is not limitless. Mitchell v. Johnson, 5 Cir. 1960, 274 F.2d 394; O'Toole v. William J. Meyer Co., 5 Cir. 1957, 243 F.2d 765; Independent Productions Corp. v. Loew's, Inc., 2 Cir. 1960, 283 F.2d 730. And although Rule 37(b) applies to all failures to comply, whether wilful or not, the presence or lack of good faith in the parties is relevant to the orders which should be given and the severity of the sanctions. Societe Internationale Pour Participations Industrielles v. Rogers, 1958, 357 U.S. 197, 207, 78 S.Ct. 1087, 2 L.Ed. 2d 1255.

In deciding whether the trial judge overstepped his bounds, it is necessary to weigh the relative faults and relative hardships. Assuming that there was

fault on the part of the defendant's attorney in not being better informed as to the whereabouts of his key witness, it seems to us that the greater fault lay with the plaintiff's attorney who knowingly failed to correct the misimpression of both Posey and defendant's attorney as to the existence of *written* statements. Posey was justified in refusing to answer the questions at the time of the examination, and the defendant's attorney properly put forth his best efforts to secure the answers once the misimpression had been corrected.

By the disallowance of the entire deposition, Goodrich was severely injured: it lost the testimony of one of two favorable eye-witnesses who was present throughout the day of the injury. Only the testimony of Jones remained, but its credibility was clouded by his being a participant in the fight and by the extended discussion of his drunkenness on the day of the fight and at other times. Posey's deposition offers corroboration that Lyster had been drinking whiskey during the day and that he had engaged in a heated, boisterous discussion of politics with a visitor who had dropped in during the afternoon. Posey's account of the fight made Lyster the aggressor and supported the defendant's contention that Jones repelled the attack with no more force than appeared reasonable. Posey testified under oath that Lyster's knee injury resulted from an unsuccessful attempt to vault a counter in pursuit of Jones.

The plaintiff had on hand for the trial the very persons who, allegedly, heard the earlier contradictory statements. If the trial judge had allowed the introduction of the deposition, the hardship to the plaintiff caused by the unanswered questions would have been offset by allowing the plaintiff's witnesses to attack Posey's credibility just as if the questions had been answered. Posey's refusal to answer the questions seems more damaging to the credibility of his testimony than any "yes" or "no" answer which he could have given. At best, the oral statements were admissible only to impeach Posey and not as an admission of liability by the defendant.

We are extremely loathe to upset a judgment on the basis of a refusal of evidence. In light of all of the circumstances, however, we feel that the trial court abused its judicial discretion in holding the defendant's attorney to an improvident agreement made in good faith in ignorance of essential facts. The Rules are a means—not an end of Justice. "In final analysis, a court has a responsibility to do justice between man and man; and general principles cannot justify denial of a party's fair day in court except upon a serious showing of willful default." Gill v. Stolow, 2 Cir. 1957, 240 F.2d 669.

## II.

In order to avoid a second appeal on the same questions, we turn now to the remaining questions this appeal presents.

A. The defendant asserts that, as a matter of law, the manager, Jones, was not acting in the line and scope of authority. It is true that in Alabama and many other states a master is not liable for a servant's intentional assaults unless the servant acted in the interests of his master or his actions were in line with his duties. See generally, Restatement (Second) Agency § 245, Reporter's Notes, Appendix at 389 (1958); 34 A.L.R.2d 372, et seq. (1954). See, e. g., Western Union Telegraph Co. v. Hill, 25 Ala.App. 540, 150 So. 709 (1933). But it is a jury question whether the manager was actuated by personal motives or by the interests of his employer; he may have acted with such vigor and malice as to make the employer liable under the doctrine of respondeat superior. See Mercury Freight Lines v. Pharo, 1956, 264 Ala. 322, 87 So.2d 642; Seaboard Air Line R. Co v. Glenn, 1925, 213 Ala. 284, 104 So. 548; Birmingham Macaroni Co. v. Tadrick, 1921, 205 Ala. 540, 88 So. 858; Jebeles-Colias Confectionery Co. v. Booze, 1913, 181 Ala. 456, 62 So. 12; Gassenheimer v. Western Ry., 1912, 175 Ala. 319, 57 So. 718, 40 L.R.A.,

N.S., 998; Hardeman v. Williams, 1907, 150 Ala. 415, 43 So. 726, 10 L.R.A.,N.S., 653; Case v. Hulsebush, 1899, 122 Ala. 212, 26 So. 155. Here, although there is some evidence that the affray was about the whiskey, there is substantial evidence, including the admissions of the manager, Jones, that it was over the inner tubes. According to both Lyster and Jones, the plaintiff had stated that he would not pay for new tubes, and the manager then insisted on retrieving the new tubes, which were already being installed. We hold that there was sufficient evidence for a jury to find that Jones was acting within the scope of his employment.

■ B. The defendant argues that the trial judge erroneously refused defendant's written charge to the effect that if the jury believed the fight grew out of a personal difficulty over the purchase of whiskey, it must find for the defendant. The trial judge did, however, charge the jury generally as to what is meant by line and scope of employment, and the defendant does not dispute the correctness of what was said. A court need not accept a written instruction but may, if it prefers, couch the charge in its own terms. Messer v. L. B. Foster Co., 5 Cir. 1958, 254 F.2d 412; Bryant v. Hall, 5 Cir. 1956, 238 F.2d 783.

■ C. The defendant contends that it was error for the trial judge to refuse to charge the jury that if it found that Lyster attacked Jones, in determining the reasonableness of the force used by Jones in self-defense the jury could consider the relative age and size of the two men. The Alabama courts have held that such a charge is not erroneous. Thomason v. Gray, 82 Ala. 291, 3 So. 38 (1887). But the Alabama courts have not stated that it would be erroneous to refuse such a charge. Jones and Lyster faced the jury. The jury could see for itself the relative size and strength of the combatants. The trial judge properly charged the jury as to self-defense and properly instructed that for Goodrich to establish the defense the evidence would have to show that Jones "used no

more force than was necessary for the protection of himself."

■ D. The defendant argues that it was error for the trial judge to refuse to charge that if the jury found that Lyster used abusive and insulting language to Jones, the jury could take this language in mitigation of damages. Alabama courts have acquired the use of such a charge as to the mitigation of punitive damages. Gissendanner v. Temples, 232 Ala. 608, 169 So. 231 (1936); Messer v. L. B. Foster Co., 5 Cir. 1958, 254 F.2d 412. In the instant case, however, the only such language alleged to have been used by Lyster was, "No, I am not going to pay for the blankety-blank tubes." This would seem to be distinguishable from those cases where the abusive language was directed at the assailant. See Mitchell v. Gambill, 1904, 140 Ala. 316, 37 So. 290 (1904); Rarden v. Maddox, 1904, 141 Ala. 506, 39 So. 95.

■ E. The defendant asserts that the continued questioning by plaintiff's counsel as to Jones's drinking poisoned the minds of the jury against the defendant. But Jones's sobriety at the time of the fight was relevant to the plaintiff's case, even if the defendant did not choose to contest the point. The plaintiff's counsel attempted to question witnesses as to the prior drinking habits of Jones; on many of these occasions the questions were not objected to, and where objections were raised, the trial judge sustained them. The jury was even admonished not to consider the drinking habits of Jones before the incident in question. This was a break for the defendant. We consider that the trial court erred in excluding evidence of Jones's drinking habits. Such habits may not be valid proof of his drunkenness upon the occasion of the fight (a fact not disputed by defendant), but if Jones was an habitual drunkard and if the defendant company had known this or had cause to know it, this fact would be relevant to the issue of punitive damages. See 1 Wigmore, Evidence § 96, no. 1 at 530 (3rd ed.).

■ F. The defendant complains that an award of $30,000 as damages is excessive, even if it includes punitive damages. The defendant points out that the plaintiff already had a knee condition, and that the employer's liability here rests only on the doctrine of respondeat superior and not on any specific acts of Goodrich. He cites Whiteman v. Pitrie, 5 Cir. 1955, 220 F.2d 914 in which this Court reversed the trial court because of the excessive compensatory damages. However, punitive damages in Alabama need not be related to the actual damages. Bell v. Preferred Life Assurance Society, 1943, 320 U.S. 238, 242–243, 64 S.Ct. 5, 88 L.Ed. 15. In United States Fidelity & Guaranty Co. v. Millonas, 1921, 206 Ala. 147, 89 So. 732, 29 A.L.R. 520, liability was claimed under respondeat superior and the Supreme Court of Alabama reduced an award of punitive damages. See also, Alabama Water Service Co. v. Harris, 1930, 221 Ala. 516, 129 So. 5. But here the award combined the compensatory damages with the punitive damages so that such a reduction would not be possible.

■ In reviewing any award of damages, the reviewing court must show a proper respect for the broad province of the jury, and consider the facts in a light favorable to the successful litigant. In United States Fidelity & Guaranty Co. v. Millonas, 1921, 206 Ala. 147, 89 So. 732, 29 A.L.R. 520, liability was claimed under respondeat superior and the Supreme Court of Alabama reduced an award or punitive damages. See also Alabama Water Service Co. v. Harris, 1930, 221 Ala. 516, 129 So. 5, where the award was not reduced. But in the case before us the award of the jury combined compensatory and punitive damages so that there is no way to know how much of it was compensatory and how much punitive. Since the extent of the injury was in dispute at the trial, we feel constrained to assume that the jury determined the facts wholly in favor of the plaintiff. On this basis it is impossible to say that the jury awarded any punitive damages at all.

The defendant argues that the instruction on punitive damages which was given to the jury was prejudicial and incomplete. In an instruction which runs for nine and one-half pages, the court's entire instruction on punitive damages was as follows:

"Now in addition to compensatory damages, if you are reasonably satisfied by the evidence in this case that an assault and battery was committed under circumstances of aggravation or malice then in addition to compensatory damages the Plaintiff might be entitled to recover in your discretion damages which we call punitive damages, damages which are in the nature of a civil fine. They are designed to prevent other people similarly situated from committing the same offense. That is the theory behind it."

This Court reviewed the requirements for instructions on punitive damages under Alabama law in Kelite Products v. Binzel, 5 Cir. 1955, 224 F.2d 131. All of the considerations mentioned in that discussion, particularly the notion of aggravation or malice, are presented in the charge before us. We recognize, however, the possibility of such a concise statement becoming lost, through underemphasis, in the instructions as a whole. We feel that, in the circumstances of this case, the trial court, upon the retrial of this case, might consider including an expanded statement of the law as to punitive damages.

The judgment is reversed and remanded for proceedings consistent with this opinion.