**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Frank COSTELLO, Defendant-Appellant.**

**No. 235, Docket 23435.**

United States Court of Appeals
Second Circuit.

Argued April 7, 1955.

Decided May 10, 1955.

court never obtained jurisdiction over his person in the suit to cancel his naturalization, and consequently the order directing him to answer questions propounded on his examination before trial and the order imposing a fine for refusal to do so were void; and (2) that his fear of self-incrimination justified his refusal to obey the order to answer the questions propounded.

Since the suit to cancel Costello's naturalization was commenced before the effective date of the Immigration and Nationality Act of 1952,[1] we may assume, as have the parties, that the procedure for bringing the defendant into court is governed by § 338 of the Nationality Act of 1940, 8 U.S.C.A. § 738 (b). This provides:

> "(b) The party to whom was granted the naturalization alleged to have been fraudulently or illegally procured shall, in any such proceedings under subsection (a) of this section, have sixty days' personal notice in which to make answer to the petition of the United States; and if such naturalized person be absent from the United States or from the judicial district in which such person last had his residence, such notice shall be given by publication in the manner provided for the service of summons by publication or upon absentees by the laws of the State or the place where such suit is brought."

Jack Wasserman, Washington, D. C., and George Wolf, New York City, for defendant-appellant.

J. Edward Lumbard, U. S. Atty., New York City, Alfred P. O'Hara and Thomas A. Bolan, Asst. U. S. Attys., New York City, of counsel, for plaintiff-appellee.

Before L. HAND, SWAN and HINCKS, Circuit Judges.

SWAN, Circuit Judge.

The appellant, Frank Costello, was admitted to citizenship by an order of the United States District Court for the Southern District of New York, on September 10, 1925. On October 22, 1952, the United States Attorney filed in the District Court a petition to cancel his naturalization on the ground of illegality and fraud in its procurement. In the course of this proceeding the defendant refused to obey an order of the court directing him to answer certain questions propounded at his examination before trial. Thereupon the United States moved, pursuant to Rule 37(b) (2) (iii) of the Federal Rules of Civil Procedure, 28 U.S.C.A., that the defendant's answer be stricken and judgment granted by default. This motion was denied but the defendant was directed to pay to the Clerk of the Court a fine of $500 for his disobedience, payment being stayed on condition that he promptly appeal. He did so, and the plaintiff has cross-appealed from so much of the order as denied its motion for judgment by default.

The appellant contests the legality of the fine on two grounds: (1) That the

On October 29, 1952 the defendant was personally served in the penitentiary at Atlanta, Georgia, where he was then imprisoned, with the summons and copy of the verified complaint. Before imprisonment he had resided at 115 Central Park West in New York City, which is within the Southern District of New York. He promptly moved to set aside the service of October 29th on the ground that section 738(b) did not authorize personal service on a defendant absent from the district in which he "last had his residence", but required notice to

---

1. The effective date for present purposes was December 24, 1952. 66 Stat. 281.

be given by publication.[2] On February 3, 1953 Judge Sugarman ruled that the issue presented by the motion had become academic because in the meantime an order for service by publication had been obtained and service made in accordance with such order. A motion to set aside the service by publication was denied without opinion by Judge Edelstein. Thereafter the defendant filed his answer, reserving therein his objection to the court's jurisdiction over his person.[3] And in his examination before trial he continued to assert this objection as well as his Fifth Amendment protection against self-incrimination.

█ We cannot entertain the slightest doubt that the court obtained jurisdiction over the person of the defendant. Whether the service of October 29th was valid the court below did not determine; nor need we, although the plaintiff's contention that personal service upon a defendant absent from the state requires no order for publication would appear difficult to refute.[4] But however that may

be, the service after an order of publication was obtained on November 25, 1953 was in strict conformity with the laws of New York with respect to service upon absentees.[5] He was served personally with the summons and complaint at the Atlanta Penitentiary on December 5, 1952.

█ The appellant argues that his imprisonment in Atlanta was in violation of 18 U.S.C.A. § 4083, because he had not been sentenced on any one count to more than a year,[6] and therefore he could not legally be sent to a penitentiary.[7] It is urged that the situation of a defendant thus illegally detained is analogous to that of a person who has been lured into a jurisdiction by fraud and then served with process. In such circumstances the service is invalid.[8] The contention is so fantastic that it deserves mention only to show that it has not been overlooked.

██ Equally lacking in merit is the contention that any jurisdiction acquired by publication was in rem—relating to

2. Had the Immigration and Nationality Act of 1952 been applicable it is clear that personal service outside the district of the defendant's residence would have been sufficient. 8 U.S.C.A. § 1451(b):
   "* * *; and if such naturalized person be absent from the United States or from the judicial district in which such person last had his residence, such notice shall be given either by personal service upon him or by publication in the manner provided for the service of summons by publication or upon absentees by the laws of the State or the place where such suit is brought."

3. Rule 12(b) (2), Fed.R.Civ.P.

4. Section 235, N. Y. Civil Practice Act:
   "Personal service without the state without order. * * * a defendant domiciled in the state, may be served with the summons without an order, without the state in the same manner as if such service were made within the state, except that a copy of the verified complaint must be annexed to and served with the summons, * * *."
   See, also, United States v. Ellis, C.C. E.D.La., 185 F. 546.

5. Section 233, N. Y. Civil Practice Act:
   "Personal service without the state in lieu of publication. In all cases when

publication of the summons is ordered, service of the copy of the summons and complaint and of any accompanying notice required by rules by the delivery thereof to the defendant personally without the state in the same manner as if such service were made within the state is equivalent to notice by publication and deposit in the post-office. * * *"
   Rule 52 of the N. Y. Rules of Civil Practice:
   "Papers to be filed on service by publication or without the state; notice to defendant. If service be made by publication, or without the state in lieu thereof, the summons, complaint and order and the papers on which the order was made must be filed with the clerk on or before the day of the first publication or the day of such personal service. * * *"

6. His conviction on counts 5, 6 and 8 was affirmed in United States v. Costello, 2 Cir., 198 F.2d 200, certiorari denied 344 U.S. 874, 73 S.Ct. 166, 97 L.Ed. 677.

7. See Copeland v. Archer, 9 Cir., 50 F.2d 836.

8. Wyman v. Newhouse, 2 Cir., 93 F.2d 313, 115 A.L.R. 460, certiorari denied 303 U.S. 664, 58 S.Ct. 831, 82 L.Ed. 1122.

defendant's status as a citizen—not in personam; hence he could not be ordered to answer questions or fined for refusal to obey the order. As stated in Milliken v. Meyer, 311 U.S. 457, 462, 61 S.Ct. 339, 342, 85 L.Ed. 278:

"* * * Domicile in the state is alone sufficient to bring an absent defendant within reach of the state's jurisdiction for purposes of a personal judgment by means of appropriate substituted service."

See, also, United States v. Stabler, 3 Cir., 169 F.2d 995, 997.

▮ The problem presented when a witness claims the constitutional privilege against self-incrimination has been recently expounded in Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118. The privilege extends not only to answers that would in themselves support a conviction under a federal criminal statute but also embraces answers which furnish a link in the chain of evidence needed to support a prosecution for such crime. But the protection thus afforded must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer—his mere say-so will not suffice. It is for the court to determine whether silence is justified.[9] And in determining whether the answer to a question can possibly have a tendency to incriminate, the court must take into consideration the setting in which it is asked.[10] On the motion to compel Costello to answer the questions propounded at his examination before trial, Judge Clancy was requested to take evidence or to take judicial notice of documents which

indicated that the then Attorney General regarded Costello as a notorious racketeer who would be prosecuted and after "he had paid his debt to society" would be deported.[11] Because Judge Clancy's opinion makes no mention of this request, it does not follow, as the appellant contends, that he did not take judicial notice of these "background" facts. It may be assumed that he did do so. In any event we shall take judicial notice of them in determining whether the defendant's refusal to answer the questions propounded was justified.

▮ The complaint in the denaturalization proceeding alleged that during the five year period preceding the date of Costello's application for naturalization, he had violated the National Prohibition Act, 27 U.S.C.A. § 1 et seq., and other federal and state laws, and that he took his naturalization oath with a mental reservation to continue to violate the 18th Amendment, the National Prohibition Act, federal and state income tax laws and other federal and state laws. At his examination before trial on September 7, 1954 Costello gave his name but refused under claim of the privilege against incrimination to answer all other questions put to him. These questions were the following:

"Q. Mr. Costello, when and where were you born?"

"Q. Have you continuously resided in the United States since the time that you arrived here?

"Q. I show you a document [Petition for Naturalization] and ask you if you can identify your signature thereon?

---

9. A few of the many decisions of this court dealing with the subject are United States v. Doto, 2 Cir., 205 F.2d 416; United States v. Costello, 2 Cir., 198 F.2d 200, certiorari denied 344 U.S. 874, 73 S.Ct. 166, 97 L.Ed. 677; United States v. Rosen, 2 Cir., 174 F.2d 187; United States v. Weisman, 2 Cir., 111 F.2d 260; United States v. Zwillman, 2 Cir., 108 F.2d 802.

10. Marcello v. United States, 5 Cir., 196 F.2d 437, 445; United States v. Coffey,

3 Cir., 198 F.2d 438, 440; Aiuppa v. United States, 6 Cir., 201 F.2d 287, 290; United States v. Doto, 2 Cir., 205 F.2d 416.

11. The documents were The Kefauver Report, an Official Release of the Department of Justice of October 2, 1952, and articles appearing on the following day in The Washington Post and The New York Times reporting remarks of the Attorney General.

"Q. I show you another paper [Declaration of Intention] and ask if you recognize that and your signature thereon?

"Q. Mr. Costello, have you ever known a man by the name of Harry C. Sausser?

"Q. Have you ever known a man by the name of Frank Goss?

"Q. Were not these two men your witnesses at the time of your Petition for Naturalization?

"Q. What date were you naturalized, Mr. Costello?" [12]

The subject-matter of these questions was both so general and so remote that by no stretch of the imagination can we conceive how answers thereto would be either incriminatory or lead to prosecution for any federal crime. In so far as the questions were directed to Costello's Declaration of Intention or to his acquaintance with men who, as may be inferred from the questions in their context, had been witnesses on his Petition for Naturalization, the questions were concerned with matters occurring over twenty-nine years ago. Any substantive crimes of such ancient vintage had long since been barred. True, the statute does not run against a conspiracy until the conspiracy ends. But any criminal conspiracy for fraud in obtaining his naturalization necessarily had terminated on the achievement of that objective and hence had long since been barred. And in the absence of some basis for a contrary inference, the possibility of Costello's participation in any other criminal conspiracy which had continued for such a long span of time that it was not yet barred but was still subject to prosecution, was too remote to support a bona fide need for the assertion of the privilege. It is true that he had recently been prosecuted for income tax violations covering the years 1946 to 1949,[13] and that the Kefauver Report and the Attorney General's announced attitude toward Costello gave him greater latitude in claiming the privilege than would otherwise have existed; but he was still under the necessity of showing some reasonable basis for his fear of self-incrimination by answering the questions propounded. Judge Clancy rightly held there was no such basis.

Turning to the plaintiff's appeal from so much of the order as denied its motion for judgment by default, it would seem at first blush that this part of the order was interlocutory and therefore non-appealable. But on the authority of Union Tool Co. v. Wilson, 259 U.S. 107, 42 S.Ct. 427, 66 L.Ed. 848, we are persuaded that jurisdiction to review it does exist. Whether to impose a fine for the defendant's obduracy or to grant a default judgment against him was a matter within Judge McGohey's discretion. Judge McGohey was of opinion that an order summarily depriving the defendant of citizenship without any opportunity thereafter to open the default would not be a "just" order.[14] We are in entire accord with this view.

The judgment is affirmed.

12. The defendant's attorney also stated that the defendant would refuse to answer all questions relating to his naturalization, his acquaintance with any person, his occupation, his income, any leased premises he may have occupied and whether he was ever arrested or had used any name other than "Frank Costello" even though those questions pertained only to years before 1925.

13. An appeal was pending in this court at the time of his oral examination on September 7, 1954. See United States v. Costello, 2 Cir., 221 F.2d 668.

14. Rule 37(b) (2), Federal Rules of Civil Procedure limits the court's discretion to "such orders in regard to the refusal [to answer] as are just".