Jack HANEY, and Michael Haney, who sues by his next friend, Jack Haney, Appellants,

v.

WOODWARD & LOTHROP, INC., and Peter F. Gordon, Appellees.

No. 9117.

United States Court of Appeals Fourth Circuit.

Argued Jan. 10, 1964.

Decided April 13, 1964.

George A. Fath, Alexandria, Va., for appellants.

E. Waller Dudley, Alexandria, Va. (Boothe, Dudley, Koontz & Blankingship, Alexandria, Va., on brief) for appellees.

Before BOREMAN, BRYAN and BELL, Circuit Judges.

PER CURIAM:

Discovery proceedings and not the merits of this personal injury action pose the decisive question here: whether a judgment by default should have been directed against the defendant-appellees for their refusal to produce records as ordered by the District Judge. We think the refusal unwarranted. The trial court's failure to impose sanctions upon the defendants, we think too, deprived the plaintiff-appellant of substantial rights, requiring us to set aside the verdict against him.

The truck of defendant Woodward & Lothrop, driven by its employee, defendant Peter F. Gordon, struck six-year-old Michael Haney in front of his home in Fairfax County, Virginia. On the assertion of Gordon's negligence, actions for damages were brought by Jack Haney, Michael's father (plaintiff) for himself and his son. Negligence was denied but, as noted, we have no occasion to examine that issue. Recount of the discovery steps is necessary for an understanding of our conclusions.

After the action was begun on April 4, 1962, interrogatories propounded by the plaintiff were, with exceptions well taken, freely and fully answered by the defendants on April 30, 1962. They disclosed that the defendants were protect-

ed by an automobile liability policy of Liberty Mutual Insurance Company. It gave the name of Donald P. Raynor as the person who conducted the investigation for the insurer.

On December 12, 1962, approximately two months before the trial date, the plaintiff had a subpoena duces tecum issued for Robert H. Ford, manager of Liberty's area office, to come to Alexandria, Virginia—6 miles away—on December 18, for a noticed discovery deposition. Service of the subpoena was not made until the late afternoon of December 17, but he did not appear. Defense counsel, who also represented Liberty and Ford, states that the deposition was postponed by agreement because Liberty and Ford desired first to be heard on a motion to quash the subpoena. Plaintiff's attorney contends that Ford and the defendants simply ignored the subpoena. The point is not pivotal now, but the witness should have attended or counsel, if agreed, should have gone before the notary and put their understanding of record. Parties are not at liberty, as the District Judge observed, to dispense with the command of a subpoena. Strictly, this power rests with the court only. Cf. Rules 30(b) and 45(b), Fed.R.Civ.P. In practice, the courts generally adopt the wishes of counsel, but the stipulations should be formal to avoid just such a misunderstanding as arose here.

The subpoena sought Liberty's investigation records. The witness, Liberty and the defendants promptly moved to quash the subpoena. The notice of deposition and the subpoena apparently were issued under the provisions of Rule 26 (a) and (b), Rule 34 and Rule 45(d), Fed.R.Civ.P. We need not distinguish between the defendants as parties and the insurer and Ford as third persons, for they acted as one and by the same attorney throughout the entire discovery steps. The District Court accorded the plaintiff his privilege, under Rule 26, to ascertain the existence, the possession and the location of the papers he desired. It found good cause shown for their production. One ground for the finding was the absence of any eye-witness for the plaintiff save that of the injured child. The motion to quash came on for hearing December 27, 1962. It was overruled by an order entered January 2, 1963.

Thereupon the defendants, as well as Liberty and witness Ford, moved the Court to clarify the order of January 2, 1963; pointing out that they disagreed with the view of the Court that counsel for the parties could not modify the return date of the subpoena; inquiring if the subpoenaed material would have to be exhibited to the plaintiff's attorney for his inspection; and stating that the defendants desired to prosecute an immediate appeal pursuant to 28 U.S.C. § 1292 (b).

After a hearing, the motion for clarification was denied by order of January 8, 1963. It detailed what was expected of Ford by the previous order—that he should appear for the deposition at eleven o'clock A.M. on January 11, 1963 in Alexandria and "produce and bring with him for examination by the plaintiff, at the time and place aforesaid, all Liberty Mutual Insurance Company documents, records, statements, etc., pertaining to the investigation of an accident on December 7, 1961, wherein Michael Haney was injured."

This witness attended the deposition with the case file and testified that he was in full charge of the local Liberty office. He tendered for inspection certain photographs and the statements taken from the truck driver and his assistant. However, on the advice of his, Liberty's and defendants' counsel, he declined to allow plaintiff's lawyer to inspect the file. The papers in the file were numbered and listed by description. The witness stated that he had no familiarity with the contents of the file, but he did not offer, nor did the insurer or the defendants, to bring the investigator who made or compiled the contents of the file. Among these papers was a "report of an investigator" consisting of six

pages, initialed by Donald P. Raynor. This was on January 11, 1963.

The trial had been set to begin February 11, 1963. On February 4, 1963, the plaintiff filed a motion for a sanction under Rule 37 by way of a default judgment of liability against the defendants, with a contempt citation of Ford, for the disregard of the production order of January 8, 1963. This motion was returnable to the trial date. Earlier action, his attorney explained, was prevented by his inability to obtain sooner a transcript of the deposition proceedings.

On the trial date before the impaneling of the jury plaintiff pressed, and the Court heard, the motion for the sanction. Ford was called to the stand with the file in hand. The deposition proceedings were reviewed. The District Judge then directed the witness "to turn over his file to me right now and to point out by some means of identification those articles, those documents therein which he considers had nothing to do with the investigation of this case, and I will rule on those and I will decide what I am going to do with the rest of the file. I will let him just mark them". To this, on behalf of the defendants, the insurer and Ford, their counsel responded " * * * we respectfully decline to tender the file to the Court."

The Court was told on this occasion by the defendants that the head of the Claims Department was one Black, that he was not present in court and in answer to the inquiry of the District Judge if Black could be brought into court, he was told that the defendants were willing to see if Black might be obtained. Ford was then arraigned for contempt—for failure to deliver the file to the Court—found guilty and assessed with a fine of $100.00 which was suspended.

The Court had been informed that one Maxim, then in court, was in possession of the file of the insurer. With the permission of the insurer and the defendants he selected from the file such papers as he considered related exclusively to the investigation. It was solely his choice, neither the plaintiff's counsel nor the Court taking part in the separation. The papers thus picked out by him were submitted to plaintiff's counsel, but they did not include the six-page investigation report. Just what comprised the other papers not produced for inspection is not known. It was understood they were "documents which have some factual information in it pertaining to the investigation but in the same document is comingled other matters specifically referring to the opinion of the investigator or some of the officials as to values, and so forth".

After looking at the selected papers, plaintiff's counsel asked that the Court "examine the remaining documents for the relevancy and pertinency to the investigation of this case". This the Court would not do, stating to plaintiff's attorney that "in the absence of a showing to the contrary, and if you have any reason now or subsequently * * * substantial reasons that they have wilfully withheld documents that pertain to the investigation, the Court will rule accordingly and act accordingly". The Court added it had no reason to think that the selection had not been made in good faith.

By reference to the Ford deposition, plaintiff's counsel specified, among others, the six-page report of investigator Raynor as papers not presently produced. The Court, emphasizing that plaintiff's counsel had been dilatory in not bringing to its attention earlier the refusal of Ford, Liberty and the defendants, ruled that the trial should not be delayed and declined to require production of any of the specified papers. At that time plaintiff's counsel declared that he did not desire a postponement of the case, and the Court repeated its unwillingness to defer the trial, saying again that if plaintiff had any evidence of the withholding of material documents by the defendants, their production would be directed. This statement was accompanied by the assurance that after the trial the Court would rule "as to who I think was wrong and what costs, if any, are going to be imposed for * * * not complying with the Court's Order".

944

Thereupon plaintiff's counsel did ask for a continuance. It was denied; the motion for the sanction of judgment by default was reserved for decision after trial. A verdict was returned against the plaintiff and a new trial denied.

In a memorandum the Court found that Liberty Mutual through its general manager, the witness Ford, was "most uncooperative in the taking of pretrial depositions, resulting in additional expense and delay in the preparation of the plaintiff's case". On the other hand, it found plaintiff's counsel had "unnecessarily interfered with and delayed" the taking of a doctor's deposition requiring the defendants to incur added expenses". For this, an allowance was made to the plaintiff of $121.60 and to the defendants $43.50.

I. With the District Judge we think Liberty was far from helpful, either in the taking of the deposition of Ford or in coming forward to assist the Court before the trial. At the deposition Ford admitted he was in charge of the office, superior to all others there, but he rested his refusal to answer in respect to the identification of the records on the ground that he had not made the investigation. True, defendants in responding to the interrogatories had given the name of the investigator as Donald P. Raynor; true, too, plaintiff had summoned Ford and not Raynor for the deposition. Not unnaturally, however, plaintiff thought it neecssary to have the office head vouch the record, inasmuch as he was the custodian. He was summoned, rather than the investigator alone, lest the latter might feel unable to qualify as the custodian.

The cooperative practice in such instances to our knowledge is for the official head to bring with him, or send alone, the person in the office familiar with the record. Dealing with a large corporation, it is difficult for counsel to do more than summon the chief officer, depending upon him to select the appropriate subordinate.

The obstacle arising from this difficulty entered into the deposition hearing,

Ford testifying then that the head of the claims operation was Nicholas Black. It reappeared at the hearing on the day of trial. Maxim was then pointed out to the Court as the one familiar with the file. The Court asked for Black, but was casually told that he presumably was in the Washington office. Thus Raynor was first named as the key man, then Black and finally Maxim. At no time, did the defendants or their insurer offer to bring to the deposition or to court the person with the requisite knowledge. When the Court entered its order on January 8, 1963 for the appearance of Ford, the defendants could readily have then advised that he was not familiar with the records. No such suggestion was forthcoming. The District Judge aptly termed it all as "bandying".

While the plaintiff did wait until a week before the trial to file his motion to enforce the production order, and conceding arguendo it was not excusable neglect, the fact is that the Court, nevertheless, in its rightful discretion entertained the motion on the return date, just before trial. So the tardiness of the motion is no longer a question.

The District Judge evidently was endeavoring to protect the insurer against unnecessary exposure of its file, directing the file to be delivered to him for determination of what should be produced. The refusal of the defendants to follow this direction was unjustified. It obstructed the progress of the case, apart from the unwarranted disregard of the Court's order. The same point had twice before been unsuccessfully contested—on the motion to prevent the deposition and on the request to clarify the order on the motion. In this connection, 8 Wigmore on Evidence, § 2200–(1) (v), p. 127 (1961 ed.), says with citations to Chief Justice Marshall and other Federal authorities:

"(v) It often happens, however, that the party desiring the evidence does not precisely know what documents exist in the hands of the witness or what existing documents contain relevant material, or that a

document, if of a certain tenor, would be privileged from disclosure on one or another ground. * * * In such a situation, it is obviously not for the witness to *withhold the documents upon his mere assertion* that they are not relevant * * * or that they are privileged. It is his duty to bring what the court requires. The *court* can then to its own satisfaction *determine* by inspection whether the documents produced are irrelevant or privileged. * * * This does not deprive the witness unduly of any rights of privacy, since the court's determination is made by its own inspection, without submitting the documents to the opponent's view. Unless such a mode of determination were employed, there could be no available means of preventing the constant evasion of duty by witnesses."

Furthermore, the refusal anticipated the ruling of the Court upon the admissibility of the record. The Court may have found that the papers should not be revealed. Thus, actually neither the question of the plaintiff's right to see, nor the admissibility of, this investigative data came before the Court.

This was not just the position of Liberty and its employees; the defendants asserted it too. But they took this stand at their risk. If they thought good cause had not been shown or that the papers were immune from production, they could, subject to their objection, have released the file to the Court saving the point for review on appeal, if the verdict went against them. No privilege was asserted and no grave injury was suggested as a result of opening the file to the eye of the Court alone.

But if they determined to resist the order, they could not at the same time expect to have the case proceed in normal fashion. By their decision the defendants subjected themselves to the sanctions of Rule 37, Fed.R.Civ.P. The sanction might well have been a default judgment against the defendants. Rule 37 (b) (2) (iii), Fed.R.Civ.P. Indeed, this

was an alternate way for the defendants to test their position, appealing from such a judgment.

■ The District Court grasped the infirmity of the defendants' attitude, for it found the witness in contempt. This penalty was properly imposed and was certainly considerate. It could have been a commitment of the witness until he released the file. However, it did not give the plaintiff his whole entitlement. In actuality, the insurer, the witness and the defendants succeeded in their obstructive tactics. It is no answer to say that the production would not have aided the plaintiff because he would not, by reason of his delay, have had the papers for preparation of trial, for this was the plaintiff's concern and not the defendants'. If the plaintiff was wrongfully refused access to the papers or the right to have the Court examine them, the defendants cannot exonerate themselves on the ground that the papers were no longer useful anyway. The documents might have served well in cross-examination. The fact is that the Court several weeks previously had told the witness Ford to produce them for plaintiff's inspection; hence the plaintiff's deprivation began long before the trial date.

■ Nor is the fault of the defendants excused by the disavowal of plaintiff's counsel of a postponement. He was willing to take the file even at the late date, presumably because of the presence of his witnesses and the expense of recalling them. Nor was it inconsistent for him to ask subsequently for a continuance, when his entreaties for production of particularly described papers had failed, although he complied with the Court's condition of a specific designation.

■ The final production of papers through the witness Maxim did not satisfy the rights of the plaintiff. This production was his selection as the representative of the insurer of what papers he thought the plaintiff might see. Certainly, the plaintiff's rights were not to be determined by the insurer's employee. It was an ascertainment to be made by

the Court. The good faith and honesty of judgment of the defendants and their counsel in stating that the withheld papers were not reports of investigation is quite beside the point. We accord to their statements the utmost credence, but the plaintiff was entitled to have the Court pass upon the question.

Further, the willingness the Court expressed to plaintiff's counsel to reverse its ruling—denying the sanctions and refusing the request for a continuance—if the plaintiff could establish that the file contained other material papers, was unacceptable because impracticable. Until either he or the Court examined the file, there was no way to know whether it contained material documents.

■ On the face of it, plaintiff was entitled to a judgment of liability by default and we would ordinarily direct entry of such a judgment. United States for Use of Weston & Brooker Co. v. Continental Casualty Company, 303 F.2d 91 (4 Cir. 1962). The defendants, to repeat, and not only the insurer and Ford opposed disclosure. However, we have no doubt of the sincerity of counsel in the belief, although mistakenly, of his clients' right to withhold the papers. Consequently, we refrain from so severe a sanction. On the other hand, the plaintiff must be made whole. The verdict and the judgment for the defendants will be set aside and the case remanded for a new trial with restitution to the plaintiff of his costs and expenses pursuant to Rule 37(a), Fed.R.Civ.P.

Accordingly the defendants will be required to pay the court costs on this appeal and the sum of $1,000.00 as expenses of travel and a reasonable fee for plaintiff's counsel for preparing the brief and arguing the appeal. The District Court will also award the plaintiff a judgment for the amount of his expense in calling expert witnesses and for a reasonable attorney's fee for the trial of the case, less credit for any related sum already paid by the defendants on order of the District Court.

Reversed and remanded.