George I. NORMAN, Jr. and Frances M. Norman, his wife, Appellants,

v.

Llewellyn P. YOUNG, a partner, for and on behalf of Francis duPont & Company, a partnership, Appellee.

No. 265-69.

United States Court of Appeals, Tenth Circuit.

March 5, 1970.

Francis R. Salazar, Denver, Colo., for appellants.

Roger H. Thompson, Salt Lake City, Utah (Dennis McCarthy and C. Keith Rooker, Salt Lake City, Utah, on the brief) for appellee.

Before LEWIS, HILL and HOLLO-WAY, Circuit Judges.

HILL, Circuit Judge.

Appellants Norman have perfected this appeal after having a default judgment taken against them for failure to produce documents, etc., as the District Court ordered. They herein challenge, *inter alia,* the right of the Court to enter a default judgment pursuant to Rule 37(b) (2) (iii), F.R.Civ.P., 28 U.S.C.A., on the grounds that the documents requested were not in existence and that a capricious order was entered because of the Court's dissatisfaction with the papers ultimately tendered.

The chronicle of events leading to this appeal is not disputed and appears as follows. Appellee Young is a New York citizen and partner in the brokerage house of Francis I. duPont & Company, and was authorized to bring the suit in duPont's behalf. Appellants are Utah citizens. The dispute over which the action was brought concerned certain agreements which the parties entered into giving duPont authority to act as the Normans' broker in the purchase and sale of securities. Apparently, pay-ment for securities purchased for appellants was never tendered and appellee sued for $10,151.33. The action was commenced June 23, 1968. On December 2, 1968, Young moved for production of documents under Rule 34, F.R.Civ.P., 28 U.S.C.A. and specifically requested statements from financial institutions with whom the Normans had accounts; federal and state income tax returns for 1967; quarterly estimates of income for 1968; any documents upon which the Normans would rely at trial to demonstrate their ability to meet the alleged debt; financial statements from enterprises which would furnish funds to enable defendants to meet the alleged obligation; and records from the Normans' accountant dealing with the duPont transactions.

On January 8, 1969, Young's Rule 34 motion came on for hearing. In response to the Court's inquiry on the reluctance to produce, counsel for the Normans stated that the 1968 quarterly estimates had neither been made nor filed and the 1967 income tax returns had not been filed. Appellee's attorney requested an affidavit stating their nonexistence and defendants' counsel agreed to furnish same. The Court then ordered: "Now I am going to order you to produce the documents, all of the documents. If you have anything of substance that prevents you from doing so, why make the proper representations in writing to the Court." The trial judge concluded by asking when discovery would be complete so a trial date could be set. Defense counsel explicitly stated that he would be prepared to proceed upon receipt of interrogatories due within that week. A hearing to consider Young's objections to defendants' interrogatories was set for January 31, 1969, but since defendants' counsel was involved in other litigation the parties agreed to postpone the hearing. The date was next set for March 3, but was again delayed due to defense counsel's presence elsewhere. The matter was continued until March 7, at which time the Court was to consider the January 8 motion for production and defendants'

failure to comply therewith. However it was March 10, before Young's lawyer and an associate of defendant's retained counsel appeared before the court. At this date everyone but the defendants and their counsel were anxious to get the case to a jury. The Court was, however, met with continued opposition from the associate attorney who represented that defendant's counsel would be busy with a criminal trial for two weeks in March and also had a state court matter, five times continued, coming later in the month. Plaintiff's counsel then informed the Court that on four or five occasions he had produced witnesses for deposition only to have defendants' lawyer make last minute changes in plans. Furthermore, related counsel for the plaintiff, since the January 8 order to produce was made, the only documents supplied were the statements from financial institutions, and defendants had proffered no other written statements saying they could not produce the others. The Court then further ordered: "All right, I am going to tell you what I am going to do. I am going to make a very specific order about that, and that order will be that within seven days, that is, on or before the close of business March 17, 1969, that the documents demanded be furnished; and by 'furnished' I mean delivered into the hands of counsel for the plaintiff. If that be not done, I am going to give plaintiff the full judgment and I am going to hold counsel in contempt of the court's order."

At approximately 4:50 P.M. on March 17, 1969, the defendants served certain documents on plaintiff's lawyer. On the 21st the parties appeared before the court to hear counsel for Young present his motion to strike defendants' answer and counterclaim, and for a default judgment against defendants. The motion was granted, and the Court orally stated that the Normans and their attorney failed to make good faith efforts to comply with the order and instead of executing written statements denying their existence, they contrived wholly worthless documents. The trial judge noted the deficiencies or irregularities. The purported 1967 income tax returns were in longhand. No deductions were claimed. No expenses were claimed. The total income was derived from two stock sales, totalling $175,000 in round figures. There were no indications of the taxpayers' basis for the securities, when they were acquired or sold. The return designated no income from stock dividends, interest, wages, salaries, etc. And written across the face of each return and estimate were notices that they were prepared under protest. The joint tax returns were not signed by Mrs. Norman. And the accountant's records, admitted to be in a certain accountant's possession by Mr. Norman during his depositions, were denied to even exist.

On April 11, defendants sought without success to amend the findings of the Court. The parties agreed to appear a week later for supplemental proceedings in aid of plaintiff's execution. On April 18 all persons were present except defendants. Thus, again the proceedings were frustrated by defendants' acts. Their absence was explained by their counsel by saying that the understanding was that the supplemental proceedings would be continued. The stipulation read into the record is contrary. During the noon recess the Normans filed a notice of appeal and thereafter, on the same day, when defendants' attorney sought to raise a Rule 60(b) matter the trial judge advised that he had lost jurisdiction because of the notice of appeal, and refused to hear the argument.

Initially we pause to note that the order of January 8 was upon firm ground. The motion sufficiently designated the desired documents; illustrated good cause for the request; and demonstrated sufficiently that they were in defendants'. "possession, custody, or control." There is no doubt that the moving party is charged with establishing possession, custody or control[1] and that a "party may not be compelled to pro-

1. Wharton v. Lybrand, Ross Bros. & Montgomery, 41 F.R.D. 177 (E.D.N.Y.1966).

duce papers or things which are not in his possession, custody, or control, or the possession, control, or existence of which the party denies under oath."[2] But records which are normally kept in the business of the party, as these were, are presumed to exist, absent a sworn denial,[3] and a prima facie case of control is all that must be established to justify issuance of the order.[4] By the nature of the documents requested, plaintiff provided a prima facie case of existence and control by the motion for production. Oral excuses were legion but never did defendants deny in writing (until after default) that the documents existed. Having failed to properly deny that which was presumed to exist, defendants failed to establish their inability to comply with the order. And, thereby, the Court could presume existence in a concealed state and/or that the evidence they would provide would show the untruth or unmeritorious nature of the defense.[5]

■ Appellants argue that on the basis of Societe Internationale Pour Participationes Industrielles et Commerciales, S. A. v. Rogers, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958), the entry of default judgment was, as a matter of law, erroneous. On the facts the cases are distinguishable. In Rogers, although there was a failure to produce documents, there was an obvious good faith attempt to comply with the court order; with the Normans no such finding is permissible. Notwithstanding the presence of bona fides, the Rogers court held relief under Rule 37 to be proper and further stated that "refuses to obey" simply means "failing to comply with an order."[6] Thus, Rule 37 relief was clearly permissible in the Norman case. However, as Rogers held, Rule 37(b) (2) (iii) remedies are to be used only where there appears "willfulness, bad faith, or any fault of petitioner."[7] In this regard, Hammond Packing Co. v. Arkansas, 212 U.S. 322, 29 S.Ct. 370 (1909) and Hovey v. Elliott 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215 (1897) must be considered. Briefly, the latter case held that an answer could not be stricken out and all right to defend could not be denied as a mere punishment for failing to comply with a court order. Hammond pared the Hovey decision by holding that a court could properly strike an answer and enter default judgment under circumstances where a party fails to produce documents as ordered. The court stated that trial courts have inherent power to presume the bad faith and untruth of an answer where the proof was suppressed provided it was essential to the disposition of the case.[8]

2.  4 Moore's Fed.Pract. ¶ 34.17 at 2524–25.

3.  See Goldman v. Checker Taxi Co., 325 F.2d 853 (7th Cir. 1963) ; McDowell Associates, Inc. v. Pennsylvania Railroad. 20 F.R.D. 219 (S.D.N.Y.1957) ; United Mercantile Agencies v. Silver Fleet Motor Express, Inc., 1 F.R.D. 709 (W.D.Ky. 1941) ; see also Jensen v. Boston Ins. Co., 20 F.R.D. 619 (N.D.Cal.1957).

4.  4 Moore's Fed.Pract. ¶ 34.17 at 2528.

5.  See Hammond Packing Co. v. Arkansas, 212 U.S. 322, 29 S.Ct. 370, 53 L.Ed. 530 (1909).

6.  Societe Internationale Pour Participationes, etc. v. Rogers, 357 U.S. 197, 208, 78 S.Ct. 1087, 1094 (1958).

7.  Id. 357 U.S. at 212, 78 S.Ct. at 1096. For cases disposed of on the basis of wilfulness or bad faith, see Diapulse Corp. of America v. Curtis Pub. Co., 374 F.2d 442 (2d Cir. 1967) ; Trans World Airlines, Inc. v. Hughes, 332 F.2d 602 (2d Cir. 1964) ; Hendricks v. Alcoa Steamship Co., 32 F.R.D. 169 (E.D.Pa. 1962) ; Textile Products v. Formax Mfg. Co., 13 F.R.D. 302 (E.D.Mich.1952) ; cf. Link v. Wabash R. Co., 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) ; Pioche Mines Consolidated, Inc. v. Dolman, 333 F.2d 257 (9th Cir. 1964).

8.  Although both Hovey and Hammond were decided prior to the enactment of the Federal Rules in 1937, the original Advisory Committee Note of 1937 makes mention of the Hovey-Hammond distinction, noting that the Rule "authorizing orders establishing facts or * * * striking pleadings, or authorizing judg-

Undoubtedly this default judgment includes an element of punishment, as the Rule intended. But here, as in Hammond, the element of punishment does not rise to the level of reprisal as in Hovey. It is mirrored in the record that the Normans' failure to produce the requested papers was willful. It was more than intentional; it was a direct flaunting of the Court's authority. The entry of default judgment was not vindictive but was compelled by defendant's conduct, in order to protect the statutorily-created right of discovery and the constitutionally-guarded due process rights of plaintiff. The court was left no alternative, for, as we said in Robison v. Transamerica Insurance Company, 368 F.2d 37, 39 (10th Cir. 1966), "The administration of the rules lies necessarily within the province of the trial court with power to fashion such orders as may be deemed proper to vouchsafe full discovery for the just, speedy and inexpensive determination of the lawsuit."

Other cases cited in support of appellants' position are also distinguishable. In B. F. Goodrich Tire Company v. Lyster, 328 F.2d 411 (5th Cir. 1964), defense counsel had acted in good faith and there was fault with plaintiff's attorney. In Read v. Ulmer, 308 F.2d 915 (5th Cir. 1962), the party's failure to produce resulted from a de facto inability to recover the articles.

■■ The trial court, after reviewing its findings, denied defendants' Rule 52(b), F.R.Civ.P., 28 U.S.C.A., motion. The statutory language is couched in terms of "may" and not "shall" and after reading the entire record and reviewing the findings, we are unable to find manifest error.[9] Appellants also claim that there was no evidence which sustained the default judgment and that the Court abused its discretion in failing to require plaintiff to produce evidence. As appellants' brief candidly admits, there is no requirement as to production of evidence in Rule 37(b) (2) (iii) cases, and, agreeing with appellants, we find the argument without merit. It is next argued that the Court erred in failing to hear the Rule 60(b) motion prior to commencement of the supplemental proceedings. The record reflects that on April 11, 1969, all parties stipulated at defendants' request that the supplemental proceedings be continued over and set for hearing at the Court's convenience. April 18 was the date set and on that day, before arguing his 60(b) motion, defendants' lawyer filed a notice of appeal, taking the case out of the trial court's jurisdiction. There was no fault here with the trial judge.

■ One final point commands consideration. The default judgment awarded plaintiff $10,151.33 plus $630.79 interest computed at 6% from March 15, 1968, to and including entry of that judgment, and 8% per annum until satisfied. In computing interest this way the trial court erred. The complaint shows that the $10,151.33 included interest from February 15 to May 15. Thus, the 6% interest running from March 15, 1968, should have been computed on $10,031.58.[10] Then, in keeping with

---

ments of dismissal or default, for refusal to answer questions or permit inspection or otherwise make discovery, are in accord with Hammond * * * which distinguishes between the justifiable use of such measures as a means of compelling the production of evidence, and their unjustifiable use as in Hovey * * * for the mere purpose of punishing for contempt." F.R.Civ.P., rule 37, 28 U.S.C.A.

9. See Glens Falls Ins. Co. v. Newton Lmbr. & Mfg. Co., 388 F.2d 66 (10th Cir. 1967); United States v. Goldfield Corp.,

384 F.2d 669 (10th Cir. 1967); Wilsey-Bennett Trucking Co. v. Frost, 275 F.2d 144 (10th Cir. 1960).

10. The complaint states: "The above sum of $10,151.33 * * * includes interest at 7½ percent on margin account debit balance from February 15 to March 15, 1968, amounting to $4.52; interest at 7½ percent on margin account debit balance from March 15 to April 15, 1968, amounting to $43.44; and interest at 8 percent on margin account debit balance from April 15 to May 15, 1968, amounting to $71.79."

Woodmont, Inc. v. Daniels, 290 F.2d 186 (10th Cir. 1961), interest must be computed as provided in Utah Statutes Annotated 15–1–4 at 8% per annum until payment or tender thereof.

The decision is accordingly affirmed in all particulars except that regarding computation of interest and on that point the case is remanded for disposition consistent with this decision.