Elsie A. DiGREGORIO, Administratrix of the Estate of Daniel S. DiGregorio, Deceased, Appellant,

v.

FIRST REDISCOUNT CORPORATION.

No. 74–1118.

United States Court of Appeals, Third Circuit.

Argued Sept. 13, 1974.

Decided Dec. 19, 1974.

James E. Beasley, Beasley, Hewson, Casey, Kraft & Colleran, Philadelphia, Pa., for appellant.

William Prickett, Prickett, Ward, Burt & Saunders, Wilmington, Del., for appellee.

Before ALDISERT, GIBBONS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This appeal questions the appropriateness of a sanction dismissing an action for failure to comply with the discovery provisions of the Federal Rules of Civil Procedure and with a specific court order.

### I.

Plaintiff, Elsie A. DiGregorio, Pennsylvania administratrix of the estate of Daniel S. DiGregorio, deceased, appeals from dismissal of her action in the District Court of Delaware on December 11, 1973. She instituted this action on March 28, 1973 to recover damages under the Pennsylvania Survival and Wrongful Death Statutes. The complaint alleged that the defendant, a Delaware corporation, is the successor to Micro Switch, Inc., an Illinois corporation, and that on or about March 29, 1972, the plaintiff's decedent "suffered severe and painful injury and death as a result of an unreasonably dangerous and defective micro switch which had been manufactured by Micro Switch, Inc." [1]

Defendant filed its answer on April 23, 1973, pleading ignorance to all the allegations in the complaint except those relating to the defendant, and on April 24, 1973, filed interrogatories. The following day, defendant served notice to take plaintiff's deposition on Monday, June 18, 1973. On May 3, 1973, defendant served a request for production within thirty days of decedent's federal income tax returns for the years 1968 to 1972, inclusive. On Friday, June 15, 1973, twenty-two days after the answers or objections to the interrogatories were due, defendant's counsel telephoned plaintiff's Philadelphia counsel to inquire about the answers to the interrogatories and was informed that a copy of unexecuted, unsworn answers would be mailed to him. He received the answers the next day (Saturday) and, on the following Monday, proceeded with the scheduled deposition.

Shortly thereafter, on June 20, 1973, defendant moved under rule 37 of the Federal Rules of Civil Procedure for an order compelling complete and responsive answers to the interrogatories.[2] Defendant filed a brief in support of its motion on June 29, 1973, but was unable to reach agreement on a briefing schedule with plaintiff's local Delaware counsel, who disclaimed authority to agree to the proposed schedule and referred defendant's counsel to plaintiff's Philadelphia counsel who actually was handling the matter. Defendant's counsel objected to dealing directly with out-of-state counsel and requested the district court to call a conference to set a briefing schedule. An associate of plaintiff's Philadelphia counsel, personally unfamiliar with the case, attended the conference on August 13, 1973, and advised the court that he was unable to understand why a brief had not been submitted

---

1. Plaintiff claims that her decedent, while at work, was sucked into a large pasting machine when the micro switch, a component manufactured by defendant's predecessor, allegedly failed to operate.

2. Defendant contended that plaintiff had not complied with rule 33 of the Federal Rules of Civil Procedure which provides in part:

 (a) . . .
 Each interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the reasons for objection shall be stated in lieu of an answer. The answers are to be signed by the person making them, and the objections signed by the attorney making them. The party upon whom the interroga-

 tories have been served shall serve a copy of the answers, and objections if any, within 30 days after the service of the interrogatories, except that a defendant may serve answers or objections within 45 days after service of the summons and complaint upon that defendant. The court may allow a shorter or longer time. The party submitting the interrogatories may move for an order under Rule 37(a) with respect to any objection to or other failure to answer an interrogatory.

 (b) Scope; Use at Trial. Interrogatories may relate to any matters which can be inquired into under Rule 26(b), and the answers may be used to the extent permitted by the rules of evidence.

since a prepared draft was in the file. The district court fixed a briefing schedule by order, and oral argument on the motion finally was heard on August 30, 1973.

In a memorandum and order of September 5, 1973, the district court found:

(1) Plaintiff's failure to answer interrogatories 1, 2, 6, 36 and 56 was unjustified.

(2) Plaintiff failed to object to interrogatories 13, 20, 21, 24, 25, 27, 42, 43, 46 and 65, and plaintiff's answers to these interrogatories were "inadequate or unresponsive to the questions asked."

(3) All plaintiff's answers failed to conform to the requirements of rule 19 of the Civil Rules of the United States District Court for the District of Delaware.[3]

(4) Plaintiff's opposition to the motion to compel adequate answers was unjustified.

The district court therefore directed plaintiff on or before September 25, 1973, to file complete and responsive answers to defendant's interrogatories and to pay defendant's expenses of $400.00, including an attorney's fee, incurred in obtaining the order.

Having received neither the answers compelled by the district court nor payment for the expenses awarded on the motion, defendant moved on September 27, 1973, for dismissal of plaintiff's action under rule 37 or other appropriate sanctions. On October 29, 1973, two days before argument on the motion for sanctions, the district court received a check for defendant's expenses payable to the order of the clerk. Since the order of September 5, 1973 required payment directly to defendant or its counsel, the check was returned and payment was not made until the hearing.

At the close of the hearing, the district court concluded "on the record and argument that no justification had been shown for failure of the plaintiff and her attorneys to abide by the Rules of Federal Civil Procedure or this Court's order of September 5 and that sanctions appeared justified under Rule 37(b)(2)." The district court noted that "plaintiff's attorneys did not realize the seriousness of their failure to follow the discovery rules and orders of this Court." Rather than immediately dismiss the action, however, the district court gave plaintiff another opportunity to bring herself into compliance with the September 5 order and the rules of discovery. Convinced that noncompliance was more the fault of her attorneys than the plaintiff, the district court communicated with plaintiff personally in the form of an order to show cause sent directly to her and to the attorneys who had introduced her to Philadelphia counsel in this matter. Another hearing was set to consider the order to show cause and defendant's motion for sanctions. The district court contemplated that, at that hearing, plaintiff might agree to removal of her present counsel as an alternative to the more severe sanction of dismissal.

Although plaintiff personally did not attend the hearing, which took place on November 21, counsel submitted her affidavit to the effect that she was aware of the purpose of the present hearing; that she had been advised that the district court "probably would" dismiss her action; that she knew she could consult with or employ other counsel; and that she was unable to further answer any of defendant's interrogatories. The district court concluded that, "plaintiff and her attorneys at three separate hearings having been afforded the opportunity to fulfill her obligations without success, . . . injustice would result to the defendant by any further prolongation

3. Rule 19 provides:

When answering interrogatories the party served shall first state the interrogatory propounded with the numerical number assigned by the propounder and then state the answer. All interrogatories and answers thereto should be deemed to be continuing, unless otherwise ordered by the Court.

of this matter." Accordingly, plaintiff's action was dismissed. We affirm.

## II.

Plaintiff's contentions on appeal ignore the full extent of misconduct which prompted the district court to dismiss her action. Plaintiff acknowledges that answers to numerous interrogatories were found incomplete or unresponsive by the district court. However, plaintiff does not address each such answer.[4] Moreover, only in a letter submitted after briefs were filed in this court, does plaintiff make any effort to explain why sworn answers have not been filed.[5]

Plaintiff first contends that she was excused from further answering interrogatories 46 and 65 because counsel for defendant reviewed certain of the decedent's income tax returns at plaintiff's deposition. Interrogatory 46 sought to elicit the amount of insurance premiums paid by the decedent and the frequency of their payment. Interrogatory 65 called for copies or outlines of the decedent's last five tax returns. Plaintiff answered these interrogatories "See income tax returns" and "Will be supplied," respectively.

■ We note preliminarily that furnishing of the tax returns may not constitute adequate response to interrogatory 46. Assuming *arguendo* that it did, however, plaintiff's position lacks foundation in the record. Not only did plaintiff elect to answer certain interrogatories by supplying decedent's tax returns, but these returns were also the subject of a separate request for production. Even under plaintiff's version of the facts, the returns were made available to defendant sixteen days after their production was required and twenty-two

days after the interrogatory answers were due. Moreover, the record does not support plaintiff's implied assertion that all the requested returns were produced and, in fact, the record seems to support a contrary conclusion.[6]

What plaintiff fails to apprehend is that, after the district court's order of September 5, the argument that returns already had been supplied lost all significance. The district court found, appropriately we believe, that the tax returns never had been produced and that interrogatories 46 and 65 had not been answered adequately. At that point it was incumbent upon plaintiff to supply copies of the returns, whether or not plaintiff herself believed they previously had been supplied, and to make any further response necessary to a complete and responsive answer to the interrogatories. Clearly inaction was not a proper response to the district court's order.

■■ Plaintiff next contends that her answers to interrogatories 20, 21, 42 and 43 were as complete as circumstances permitted. Interrogatories 20 and 21 were multipart questions seeking details of the deceased's employment during the ten years prior to his death. The part of interrogatory 20 relating to the decedent's salary was answered, "Income tax returns have been supplied," an obviously inaccurate statement when made even under plaintiff's view of the facts. In answer to interrogatory 21, relating to self-employment, plaintiff "estimated" that, on the basis of decedent's 1970 tax return, decedent earned approximately $35,000.00 from betting activities. We agree with the district court that the answers to these interrogatories were inadequate and unresponsive.

Plaintiff's Philadelphia counsel, in a letter of August 20, 1974 addressed to this court, attempts to place responsibility for his failure to file sworn answers upon a secretary formerly in his employ.

---

**4.** Plaintiff makes no attempt to explain her failure to answer all or part of interrogatories 1, 2, 6, 13, and 56 as ordered by the district court.

**5.** Even the unsworn answers were never filed by plaintiff. A copy of these answers appended to defendant's motion to compel complete and responsive answers was the only copy available to the district court.

**6.** At the deposition during which the tax returns allegedly were produced, counsel for the plaintiff stated: "That is correct [that the returns have not been supplied], and I will send them to you later, in that case."

■ Interrogatories 42 and 43 called for the amount of gifts made by decedent to his heirs at law during the five years prior to his death. Although plaintiff states in her brief on this appeal that her son, one of the heirs at law, "was present during meetings at which attempts were made to answer the defendant's interrogatories," interrogatory 42 was answered without reference to amount and interrogatory 43 was answered, "Presently unknown." These answers do not evince a bona fide attempt to make adequate responses.

Interrogatory 36 inquiring into the marital relationship between plaintiff and the deceased was answered, "This question does not seem to be any business of the defendant's [sic]." Plaintiff now contends that any noncompliance on her part was cured by her affidavit filed shortly before the suit was dismissed. In the affidavit plaintiff purportedly withdrew this highly inappropriate answer and substituted the word "no."

■ Even if we assume that plaintiff's initial response to interrogatory 36 constituted a proper objection, that objection was overruled by the district court in its order of September 5, 1973. Plaintiff nonetheless failed to answer interrogatory 36 during the twenty-day period set forth in the district court's order. Nor had plaintiff answered the interrogatory by the time of oral argument on defendant's motion for sanctions. Not until the day of the final hearing did plaintiff undertake to comply with the district court's order in this one respect. Plaintiff has not complied, however, with the district court's direction to recast, execute in sworn form, and file a complete and responsive set of interrogatory answers. Were interrogatory 36 the only one at issue, we might take a different view. However, plaintiff's conduct with respect to interrogatory 36 is just one instance in the pattern of intransigence which has characterized plaintiff's actions during discovery.

■ Concerning interrogatories 24 and 25, plaintiff contends that, taking her answers together with her testimony at deposition, she "supplied defendant with all the information she possessed concerning past injuries her husband had sustained, and the physicians he had consulted to treat those injuries." [7] Plaintiff's assertion that written interrogatories may be answered through testimony during oral deposition illustrates a fundamental misapprehension concerning the timing and purpose of discovery. Plaintiff's answers to defendant's interrogatories were due three weeks before plaintiff's deposition and were to expedite the proceedings and aid defendant's counsel in the deposition. Plaintiff's testimony on deposition, rather than curing, actually highlights the inadequacies of the answers given to the written interrogatories. Moreover, even if the oral testimony is considered, we are satisfied that the district court was justified in compelling further response.

■ Interrogatory 26 asked whether the deceased had been hospitalized for any illnesses or injuries during his lifetime. Interrogatory 27 sought to determine whether any of these illnesses or injuries had affected the deceased permanently. Although plaintiff listed two occasions of hospitalization in interrogatory 26, she answered interrogatory 27 merely with the word "inapplicable." On appeal, plaintiff contends for the first time that the answer "inapplicable" "clearly [means] that no answer applied since her husband suffered no injuries or disease which had had any permanent effect." We view the plaintiff's interpretation of this cryptic response as strained and obviously not "clear." We are intrigued by plaintiff's imperviousness to all suggestion that she recast and complete her answers. We are dismayed by the reliance of plaintiff's counsel on his own construction of the answers as sufficient grounds for noncompliance with the district court's order. *Cf.* Dia-

---

7. Although plaintiff refers to interrogatory 23 in her brief, we believe she intended to refer to interrogatory 24.

pulse Corp. v. Curtis Publishing Co., 374 F.2d 442, 446 (2d Cir. 1967).

### III.

Rule 37(b)(2) of the Federal Rules of Civil Procedure authorizes the imposition of sanctions, including dismissal of an action, against a party who fails to comply with a discovery order.[8] The choice of an appropriate sanction generally is committed to the sound discretion of the district court. *See* Mangano v. American Radiator & Standard Sanitary Corp., 438 F.2d 1187 (3d Cir. 1971) (per curiam). The district court's discretion, however, is not without bounds. In Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers,[9] the Supreme Court held that a district court may not dismiss an action for noncompliance with a discovery order "when it has been established that failure to comply has been due to inability, and not to willfulness, bad faith, or any fault of petitioner." 357 U.S. 197, 212, 78 S.Ct. 1087, 1096, 2 L.Ed.2d 1255 (1958).

Plaintiff asserts on this appeal that dismissal of her action was an abuse of discretion since she was "unable" to supply further answers to the defendant's interrogatories. In light of this inability, she contends, the district court's choice of sanctions was limited as a matter of law to those less severe than dismissal.

As we pointed out in some detail above, we are unconvinced that plaintiff was unable to comply with the district court's order of September 5. Rather we perceive a pattern of conduct in fla-grant disregard both of the general rules of discovery and of a specific court order. *Cf.* Diapulse Corp. v. Curtis Publishing Co., *supra*, 374 F.2d at 446. Despite a court order and three hearings, plaintiff has yet to file sworn answers to defendant's interrogatories. Moreover, plaintiff's untimely answers, which were mailed to defendant's counsel, remain unamended and unfiled in the face of the court order.

Plaintiff nevertheless contends that, since the district court did not make a specific finding of willfulness, dismissal was inappropriate. Although we do not decide whether under other circumstances a finding of willfulness may be necessary, we decline to require such a finding where, as here, willfulness is "mirrored in the record." Norman v. Young, 422 F.2d 470, 474 (10th Cir. 1970).

Because dismissal is the most severe sanction available to a district court under rule 37, we are ever reluctant to affirm its invocation.

[I]ts use must be tempered by the careful exercise of judicial discretion to assure that its imposition is merited. However, where one party has acted in willful and deliberate disregard of reasonable and necessary court orders and the efficient administration of justice, the application of even so stringent a sanction is fully justified and should not be disturbed.

Trans World Airlines, Inc. v. Hughes, 332 F.2d 602, 614 (2d Cir. 1964). We are satisfied that the district court did not impose dismissal precipitately or rashly.

---

8. Rule 37(b)(2) provides in part:

> If a party . . . fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule . . ., the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
>
> \* \* \* \* \* \*
>
> (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part there-

9. The petitioner in *Rogers* failed to comply with a production order because the records sought were protected from disclosure by the Swiss penal code and a specific directive of the Swiss Federal Attorney. The petitioner subsequently made persistent efforts, with substantial success, to obtain permission from the Swiss authorities to disclose many of the records requested. Accordingly, the district court specifically found that the petitioner acted in good faith.

> of, or rendering a judgment by default against the disobedient party.
> Fed.R.Civ.P. 37(b)(2).

*Cf.* Diapulse Corp. v. Curtis Publishing Co., *supra*, 374 F.2d at 446–447. It displayed great concern for plaintiff and patience with her counsel. It carefully weighed plaintiff's interests and the necessity for efficient administration of justice. Because of the dismissal's effect on plaintiff's claims, the district court was careful to notify plaintiff directly of the conduct of her case and of the impending dismissal. The district court did not dismiss the action until plaintiff personally had been afforded an opportunity to be heard and by affidavit had approved the conduct of her attorneys.

 Under the circumstances which confronted the district court in this case, we are also satisfied that dismissal did not constitute mere punishment and hence a denial of due process. *Compare* Hovey v. Elliott, 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215 (1897) *with* Hammond Packing Co. v. Arkansas, 212 U.S. 322, 29 S.Ct. 370, 53 L.Ed. 530 (1909). Of course, all sanctions by their very nature involve an element of punishment. Their function is to encourage adherence to discovery procedures. Only where the sanction invoked is more stern than reasonably necessary does a denial of due process result. Here "the element of punishment does not rise to the level of reprisal as in *Hovey*." Norman v. Young, *supra*, 422 F.2d at 474. Dismissal "was not vindictive but was compelled by [plaintiff's] conduct, in order to protect the statutorily-created right of discovery and the constitutionally-guarded due process rights of [the defendant]." *Id.*

We find no abuse of judicial discretion. The judgment of the district court will be affirmed.

The clerk is directed to transmit a copy of the majority and dissenting opinions to the plaintiff personally.

GIBBONS, Circuit Judge (dissenting).

Rule 37(b)(2) Fed.R.Civ.Proc. provides four separate sanctions for the failure of a party to obey a court order to provide or permit discovery. These sanctions are:

"(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established . . . ."

"(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence; "

"(C) An order striking out pleadings or parts thereof, or staying further proceedings . . . or rendering a judgment by default against the disobedient party; "

"(D) [A]n order treating as a contempt of court the failure to obey any orders . . . ."

Facially, the Rule imposes on the district court an obligation to exercise some reasoned discretion with respect to the alternative sanctions. In this case the district court did not consider alternatives (A), (B) or (D). It acted on the motion seeking relief only under Rule 37(b)(2)(C). Even under subsection (2)(C) the Court was obliged to exercise some reasoned discretion between the alternatives of striking out a pleading or part thereof, staying the proceedings, or rendering a default judgment. Without discussing the alternatives, and thus apparently without considering them, it chose to grant the defendant's motion for the most severe sanction available under the Rule, dismissal with prejudice. I have no doubt that some sanction was appropriate, but I cannot vote to affirm when the exercise of reasoned discretion plainly required by the Rule is not disclosed in the district court's opinion. Moreover, I doubt if on the present record the court, had it discussed the alternatives and chosen the ultimate sanction, could be affirmed.

The Rule 37(b)(2)(C) sanction is available in two cases only; where the party refuses to obey an order *to provide* or *to permit* discovery. Thus failure to obey an order to make discovery in a certain form, as by retyping the interrogatories and the answers on the same paper, does not even fall within the Rule though other santions might be appropriate.

Nor does Rule 37(b) apply by its terms to the disobedience of an order to pay counsel fees within a certain time to the successful attorney directly rather than to the Clerk. In this case there is no contention that the order deals with *permitting* discovery. The workmen's compensation file which is said to contain additional information could have been discovered by other means which were not availed of. The attorney for the defendant did not want to discover the file himself; he wanted the plaintiff to examine it and answer interrogatories. We are dealing, then, with a failure of the party *to provide* discovery by examining that file and answering interrogatories based on the information contained therein.

In Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958), the Supreme Court draws a clear distinction between all the other sanctions set forth in Rule 37(b) and the ultimate sanction of dismissal with prejudice. The Court said:

> "The provisions of Rule 37 which are here involved must be read in light of the provisions of the Fifth Amendment that no person shall be deprived of property without due process of law, and more particularly against the opinions of this Court in Hovey v. Elliott, 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215, and Hammond Packing Co. v. State of Arkansas, 212 U.S. 322, 29 S.Ct. 370, 53 L.Ed. 530. These decisions establish that there are constitutional limitations upon the power of courts, even in aid of their own valid processes, to dismiss an action without affording the party the opportunity for a hearing on the merits of his cause." 357 U.S. at 209, 78 S.Ct. at 1094.

Mindful of the due process limitations, the *Rogers* Court construed Rule 37(b)(2)(C) as requiring willfulness, bad faith, or fault of the party before the ultimate sanction of dismissal with prejudice could be imposed. Since *Rogers*, Rule 37(b)(2)(C) has generally been interpreted as requiring a finding of willfulness or conscious disregard of the order. *See* cases collected in 4A J. Moore, Federal Practice, ¶ 37.03[2.–5] at 37–67 to 37–70 (1974 ed.); Federal Rules Digest, § 37b.244 at 272 (1973). Where counsel in a sincere, though mistaken belief has withheld his client's papers, or where there has been a refusal to answer questions upon a claim of privilege that has been rejected, appellate courts have refrained from applying the ultimate sanction of a default judgment. *See, e. g.,* Haney v. Woodward & Lothrop, Inc., 330 F.2d 940 (4th Cir. 1964). *See also* United States v. Costello, 222 F.2d 656 (2d Cir. 1955). This circuit has predicated such a sanction only upon a finding of *inexcusable* failure to comply with the order. Mangano v. American Radiator & Standard San. Corp., 438 F.2d 1187 (3d Cir. 1971).

The district court concluded that plaintiff had failed to make a good faith effort to secure the additional information required by its order because the additional information, though not within plaintiff's personal knowledge, could have been obtained by examination of a workmen's compensation claim file which was available to her attorney. There is no question but that a party cannot refuse to provide discovery with respect to information not in his personal knowledge but reasonably available to him. But the refusal to provide this information appears on this record to have been based upon her attorney's legal advice that if she were to undertake discovery by viewing the workmen's compensation file she would, under Pennsylvania law in a wrongful death action, open the door to proof of contributory negligence on the decedent's part which would otherwise be barred by that State's Dead Man's Statute. (Appendix at 163a). The court found this explanation "incomprehensible." (Appendix at 212a). The court did not find that the plaintiff's attorney asserted this belief on the effect of Pennsylvania Law, or that plaintiff followed his advice in this respect, in bad faith. I, too, find the view of the plaintiff's attorney as to the effect of

the Pennsylvania Dead Man's Statute "incomprehensible." [1] But that is not the standard of Rule 37(b)(2)(C), as interpreted in *Rogers*, for the imposition of the sanction of dismissal. Plaintiff's attorney based his actions on an apparently mistaken legal position in an effort to protect his client's cause of action from a defense of contributory negligence. His poor judgment seems to have been compounded by a breakdown in communications between Philadelphia and Wilmington counsel. The record does not support the kind of finding required by *Rogers*, which in any event was not made.

I would vacate the judgment dismissing the complaint and remand for consideration of the alternative sanctions available under Rule 37(b)(2).

1. Assuming application of the Pennsylvania Dead Man's Statute, 28 P.S. §§ 322, 325 to a diversity case tried in Delaware, the attorney's contention would seem to be foreclosed by Dennick v. Schweiwer, 381 Pa. 200, 113 A.2d 318 (1955).